Menken Bros. *v.* J. L. Combs.

**Bill of Exchange — Conditional Acceptance of Order Against Balance Due.**

> The acceptance of an order to pay a specific sum out of any balance due on settlement with the drawer on condition that there is anything due him on settlement, operates as an. assignment, and the drawee cannot afterwards pay over the funds to the drawer without having first paid the order.[1]

---

[1]

Acceptance of an order to pay a specific sum out of any balance due on settlement with the drawer, operates as an assignment *pro tanto*, and takes precedence of a garnishment subsequently served on the acceptor as debtor of the drawer, though before such settlement. Menken *v.* Gumbel, 57 Miss. 756.

While a valid assignment of a part of a debt may be made regardless of the assent of a debtor, and while an order drawn on a particular fund is an assignment *pro tanto*, a bill of exchange or draft, payable generally and not specifying any particular fund, is not an assignment, and where the drawee refuses to accept and pays the drawer, the payee cannot hold him liable. —Bush *v.* Foote, 58 Miss. 5.

Section 2230, Code 1871, does not require the acceptance of an order or draft to be in writing. It may be made verbally, and may be implied from conduct or words. McCutcheon *v.* Rice, 56 Miss. 455.

Now, acceptances must be in writing. Code 1880, § 1133; Code 1892, § 3515.

The acceptance of a draft or order may be conditional, and if the payee assents thereto, it constitutes the contract. McCutcheon *v.* Rice, 56 Miss. 455.

**Bill of Exchange — Suit on Such Acceptance.**

In a suit by the payee on such acceptance, against the acceptor, the plaintiff is, prima facie, entitled to recover when he proves the receipt of funds sufficient to pay the order by the acceptor and its payment to the drawer, and it then devolves on the defendant to explain such payment.

**Same — Condition Precedent.**

An order was given reading, "Pay Menken Bros., or order, $1,400 out of any balance due me on settlement, etc.," and was accepted as follows: "Accepted with the following conditions: If anything is due F. M. Duke on settlement day, January 1, 1878, or thereafter." *Held,* That Menken Bros. would not be required to prove that a settlement of accounts had been made between drawer and payor as a condition precedent to their right to recover.

**Same.**

Such recovery cannot be defeated by defendant by invoking the letter of the contract, that no settlement was made, since, if there was no settlement, the defendant had waived it as to the drawer, and, having waived it as to him, cannot insist upon it as to plaintiff.

Suits by appellants, Menken Bros., against J. L. Combs, on a conditional acceptance of an order. From a verdict and judgment for defendant, plaintiffs appeal. The opinion of the court states the facts.

APPEALED from Circuit Court, Yalobusha county, first district, W. S. FEATHERSON, Judge.

Reversed and remanded, February 5, 1883.

*Attorneys for appellant, R. H. Golladay, and T. W. White.*

*Attorneys for appellee, FitzGerald & Whitfield.*

Such acceptance can be enforced against the acceptor only on averment and proof that the condition has been performed. Shackelford *v.* Hooker, 54 Miss. 715.

Where the acceptor of a domestic bill adds to his signature words showing that he accepts as agent for the drawer, parol evidence is admissible between the parties to show that the intent of the acceptance was to charge, not the acceptor personally, but the drawer whose funds he held. Hardy *v.* Pilcher, 57 Miss. 18.

Brief of R. H. Golladay:

Combs so delayed his settlement with Duke that his liability becomes absolute. Judge Kent, 3 Commr. 91, says: "When the facts and circumstances are ascertained, the reasonableness of time is a matter of law, and every case will depend upon its special circumstances." The authority is speaking of promissory notes, but the proposition is correct generally. The delay of Combs is not explained; and the conclusion is believed to be justified by the facts that Combs' conduct was not merely negligent but intentionally fraudulent. Duke and Combs have never settled. Duke, up to the time he testified, did not know how stood the matters confided by him to Combs, and though pretended that Duke's debts to his brothers and sisters should be *first* paid, others were paid in preference. Duke does not pretend to know what disposition Combs made of the effects received from Duke.

And yet Combs opens up an account with Duke (insolvent), and sells him goods, and credits him with collections, presumably from assets placed by Duke in his hands, ostensibly for others. It is almost certain that the collections made by Combs and credited to Duke, are collected from Duke's assets, thus fraudulently turned back into Duke's hands.

Combs charges Duke with $825, cash paid for storehouse. Now the decree in the case discloses the fact that Combs became Duke's assignee of this store house (Mahan property) and received title and holds the property apparently as his own, possibly in secret trust for Duke. The accounts, copied in the record, clearly establish a perversion of the Duke assets.

As applicable to the facts, the instructions for plaintiffs, refused by the court, ought to have been given. And the instructions on behalf of defendant are obnoxious to the objection that being based on a hypothetical state of facts, they do not embrace all the facts established in the case; nor do they submit to the consideration of the jury the collusion of Combs and Duke. It may fairly be said that the instructions are contradictory and calculated to mislead the jury.

The court is referred to Menken v. Gumbel, 57 Miss. 756.

Brief of T. W. White:

When the draft given by Duke to Menken Bros. for $1,400 on J. L. Combs, the appellee, was accepted by him, what rights ac-

crued to appellants, and what duties were assumed by the appellee?

Clearly, as say the court in Menken *v.* Gumble,. 57 Miss. 758, "It was an assignment of so much of the funds or assets in his hands as were necessary to pay it." *That* was fixed; the only condition being that "there should be so much of said assets on a settlement, January 1, 1878, or thereafter as should be sufficient to pay it," and as a consequence any part of such sum as might be on hand.

The duties assumed in the premises by J. L. Combs are equally fixed and certain. He became a trustee for Menken Bros., as much so as for any party interested in the assignment. As to them, it was his duty to collect up and husband the proceeds of the notes, accounts, and mortgages assigned him by Duke, to take care of, sell and dispose of the goods put in his possession by Duke, and not to misapply them, or allow their misapplication by others. He had no right to loan out the money to Duke or any other person; no right to allow Duke to take the goods; no right to use any of the money when collected for his own purposes, or buy property with it in his own name. Not only was he bound to do, or not to do, as above mentioned, but his duty was to perform these duties speedily and particularly to be prepared for a settlement of the matter, January 1, 1878, the time set down in his acceptance on the face of the order, or if he should fail in any of these duties, to be prepared to give when called on, a reasonable and valid excuse for his non-performance of them.

The record showed that he moved the goods out into the country to a. private house, and after keeping them there for some time, that he brought them back to "Garner," the railroad station, but instead of putting them in his store for sale, or taking any ·steps to sell them, he put them up in the "Masonic Hall," from which they were taken in execution and sold by process issued on judgment against Duke; whether obtained before or after assignment to him, he does not explain. From the account kept against Duke on his book, proved by Bell in his testimony, it is clear that many of them were delivered to Duke himself, and if they were ever pretended to have been paid for by him, it must have been by collections of the assigned assets, or the proceeds of sales of other articles of the same assigned goods. He violates his trust

by selling these goods to Duke on credit—he pays for them by misapplying the proceeds of other articles sold to others.

The money collected by him fared little better, the account shows that large amounts of it were handed and charged to Duke —why or wherefore is not explained—and what is more remarkable, large sums are given to other parties, whose names are not mentioned in connection with the assignment, either as beneficiaries under it or creditors in any way connected with the property assigned. This account shows that he collected, of debts turned over to him, and sold of goods in all, to the amount of $2,907.99. With this, he paid Walker, $220; Bull, $200; Fargason, $175; Barnes, $141.65, and $736.65 to preferred creditors. The account shows $825 paid for storehouse, and the record on file in the case shows that it was bought for himself and title taken in his own name. The record filed by agreement from Chancery Court, Yalobusha county, shows that the Mahan debt was paid by a sale of a storehouse which brought amount of debt. It is true Combs bought it, and having taken title in his own name, charged it on his account, or rather credited himself with it on the account, filed with Bull's testimony. There is no proof or pretense that this storehouse has in any manner been applied to the purpose of the assignment.

It was the duty of Combs to make a settlement of his transactions with assets delivered to him by Duke, on the 1st day of January, or to be able to give a valid excuse for not doing so, and if he had such an excuse *then* he should be able to show that he had disposed of the liabilities in a reasonable time. He made no settlement on the 1st of January, 1878, and gave then, and gives no valid reason for not having done so. Nay, further, he was indulged by plaintiffs till May term, 1881, of Yalobusha county court, when this suit was brought, and still there is no explanation given by Combs of what had been done by him in the matter, and when at last this case is brought to trial, and his bookkeeper and his books are brought before the court, the fact is disclosed that Duke is the principal beneficiary of his own assignment. In view of these facts, appellants contend that the court should have given the second instruction asked for by plaintiff.

That the court erred in refusing the third charge of plaintiff. See Menken *v.* Gumbel, 57 Miss. 759, where the court says, "If

Combs failed to make the settlement, he could not plead his negligence to defeat the rights of others."

The court erred in giving the third charge asked for by defendant, without modification, as it was calculated to mislead the jury in this, the court states roundly that the burden of proof was on plaintiff to make out his case, and unless he had done so, they must find for defendant. Now the law is that in this case the burden is on the plaintiff, but when he showed the making and acceptance of the draft, and that after such acceptance Combs had allowed Duke, the insolvent assignor, to take and hold a large part of the assets assigned, and that Combs had failed to render any account of his acts in the matter, *then* there was a shifting of the burden of proof (and they should have been so informed) so that it became incumbent on Combs to show why he had failed to perform his duty in the premises, and why he had given the assets into the hands of Duke.

The motion of plaintiff should have been sustained by the court. The testimony before the jury showed a most flagrant misapplication and malapplication of the funds assigned to him for the benefit of creditors, of whom Menken & Bro. were part, after the acceptance of the order of Duke, and the finding of the verdict was manifestly wrong under the circumstances.

Brief of FitzGerald & Whitfield:

We deem this case settled by the testimony in the bill of exceptions. It clearly appears that Combs, Iglams, the agent of appellants, and Duke, had an express understanding that Combs should proceed with the collection of Duke's claims, and pay, first of all, the preferred creditors named, and that the order accepted by Combs conditionally, was to be operative only upon the contingency of there remaining in Combs' hands, after the payment of all these preferred creditors, and Combs' commissions, an amount sufficient to pay, in whole or part, said order; that the whole assignment, in all its features, was thoroughly explained and understood by plaintiffs' agent, and that too before he got his order; that when he insisted upon the order, Duke told him Combs would not accept it, and that Combs did refuse to accept it until Duke being called up, and the express agreement being entered into by Iglams that the order was to be worthless

and invalid, until all these preferred creditors and commissioners were paid in full, Combs on the faith of that stipulation on the part of plaintiffs, thus accepted it in that way. It also most clearly appears by the testimony of appellants' witness, J. H. Bull, that the entire value of all the assets turned over by Duke to Combs was wholly insufficient to pay these preferred creditors even, and that Duke and Combs both so informed Iglams at the time; and that Combs, after realizing all he could, did pay several thousand dollars on these preferred claims, but did not, and could not pay them all.

In view of this clearly established state of case, how is it possible for plaintiffs to have any *locus standi* here? That is the whole case as we conceive, and the citation of legal authorities applicable to such proof, is certainly needless here. It would be a manifest fraud to allow plaintiffs to repudiate the very agreement upon which the acceptance of this order was based. The parol proof does not contradict or vary the written order and its acceptance. The acceptance needs explanation to make it sensible—"provided anything is due F. M. Duke on settlement day, January 1, 1878, or thereafter." What settlement? What kind of a settlement? Why, plainly the "settlement" we would have (Duke and Combs) after the payment by Combs of all these preferred debts, and Combs' commissions. The parol testimony simply lets in upon the written acceptance and order the clear light of the circumstances under which they come into existence, and knowledge of which was essential to the proper explanation, intelligibility, and understanding of the order and acceptance. Shackelford *v.* Hooker, 54 Miss. 716.

Counsel for appellants, in their brief, evidence their conviction that the testimony of Duke and Bull settle the case conclusively against them, and explain that though they called Bull to the stand, they only did so through necessity, and argue as to Duke that his testimony was rendered incompetent through the death of Iglams. It is too plain for argument that Duke was not testifying to establish *his own* claim, etc. There is no controversy between us, indeed, as to the position that plaintiffs could only recover on this order "after the preferred debts should have been paid." Counsel concede this in the first sentence of their brief.

But much ado is made about the account kept by Combs against

Duke, as it is gravely stated in counsel's brief that this account shows Duke drew from Combs, after giving the order and its acceptance by Combs, some $3,000, only some $800 of which went to preferred creditors. Now, this account shows, in fact, on its *very face,* that on November 10, 1877, Combs paid for Duke on Mahon's storehouse, a preferred debt, $825; to Felix Walker, a preferred creditor, $220; J. H. Bull, a preferred creditor, $200, and J. T. Fargason, a preferred creditor, $175; and on November 19, 1877, to R. M. Barnes, a preferred creditor, $141.65. A total paid by Combs to these preferred creditors for and on account of Duke, of $1,561.65, instead of "some $800." How counsel could so err with the face of the account before them, we do not comprehend. Besides the preferred debts above specified, Bull says he owed, specifying these debts, the Mahan estate, etc., and then adds, "besides other debts." This account would show less than $1,500 left after paying these preferred creditors, but of what does this $1,500 consist? Why, merchandise furnished by Combs out of his own store to Duke! Bull, their own witness, testifies, "I do not know where the merchandise in this account came from; whether it was any part of the original $1,000 furnished by Duke to Combs, or whether it was *all* from Combs' store"—showing Combs had furnished part to the witness' knowledge, from his own store in Garner.

But the testimony of both Bull and Duke make it plain that all the $1,000 furnished by Duke was sold under judgment against Duke, except some part which Bull says Combs advanced to Duke's customers. The reason these goods were placed in the Masonic Hall, Bull says, was that at that time Combs did not control any part of the storehouse but the Masonic Hall; and yet counsel discover a ghost here! So much for the merchandise in this account. What about the cash? Counsel say all but $800 went to Duke himself. Now the face of this account does not tell us nor does a single witness, where the cash came from; but it does show amounts paid to other parties than Duke, to the amount of $681.93. This, added to the amounts paid to preferred creditors, will make $2,243.58.

This would leave less than $800, but it must be remembered that to this $2,243.58 are to be added reasonable commissions to Combs, which Iglams expressly agreed should also be paid be-

fore his order was to be operative. And, again, the balance struck on this account shows Duke to be Combs' *debtor* by $300.34, without reference to commissions.

It appears, therefore, conclusively, that Duke received no benefit from this source. Indeed Duke testifies positively that he derived no benefit from the $1,000 in merchandise turned over to Combs. And what is fatal to plaintiffs, who have their case to make out, if there was nothing else, is that no witness shows where the merchandise or the cash *came from.* But wherever it *came from,* it did not *go to* Duke.

There is, therefore, a clear palpable break down in plaintiff's effort to show Combs turned over to Duke $3,000 in merchandise and money. The evidence shows the very reverse. Now, Iglams was informed minutely by Duke, before he got out the order, that Combs was to advance money or merchandise, such as this account shows Combs did advance, to Duke's then customers, and expressly agreed that this should be done, and the crops made, and that then, after realizing from these farmers, etc., and paying in full the $5,000 due preferred creditors, and Combs' commissions, the plaintiff's order should be operative, and then only.

Some comment is made as to cousins, uncles and aunts. This record shows outsiders were paid, but the family not. And surely it goes without saying that all the speculations of counsel about "a private understanding between Combs and Duke" is speculation, pure and simple; the evidence does not hint at such a thing, but their own witness says it was a *bona fide* assignment on Combs' part, and on Duke's, so far as he knew.

The court very properly refused the instructions refused to appellants, because they were wholly inapplicable to the case made out by the evidence.

It is wholly unnecessary to refer the court to the authorities as to the rule in regard to setting aside the verdict of a jury, and without wearying the court with further argument, we submit that this is manifestly a case in which plaintiffs have signally failed to make out, by evidence, a case calling for relief.

Opinion.—Cooper, J.:

One Duke, who was indebted to the appellants in the sum of $1,400, made a parol assignment to the appellee of his stock of

goods and a considerable amount of notes and accounts, which goods, notes and accounts, Combs was to convert into money by sale of the goods and collection of the debts, and out of the proceeds was to pay several thousand dollars to certain designated creditors of Duke, and was to retain a considerable commission for his services. After this assignment was made, Menken Bros. procured Duke to give them an order on Combs, which was in the following form:

"GARNER, Miss., May 1st, 1877.

"DR. J. L. COMBS:—Pay to Menken Brothers, or order, fourteen hundred dollars out of any balance due me on settlement, the amount paid on this order to be a credit on my acct. with Menken Bros. F. M. DUKE."

Upon which Combs indorsed his acceptance as follows:

"Accepted with the following conditions: If anything is due F. M. Duke on settlement day, January 1, 1878, or thereafter.

"J. L. COMBS."

On the 4th day of May, 1881, the appellants brought suit against Combs, on the writing, adding in the declaration a count for money had and received to their use.

The evidence, which in some respects is meagre, shows the existence of about this state of facts: Combs collected of the assets transferred to him a considerable amount and sold a quantity of the goods; how much is not clearly shown; the balance of the goods were either turned over by him to Duke, and therefore were levied on by the judgment creditors of Duke, or were levied on under said judgments while in the hands of Combs, and sold by the sheriff. Out of the moneys received by him Combs paid some of the creditors who were preferred at the time of the assignment, but so far as shown, there remains of such preferred claims between three and four thousand dollars yet unpaid. After the acceptance of the order in favor of plaintiffs, Combs opened an account with Duke, in which Duke is credited with collections made on the assigned choses in action, and is charged with the debts paid by Combs to the preferred creditors. On this account appear also, charges against Duke for money paid to him or to others on his orders; the total amount of charges of this character, probably equal or exceed plaintiff's demand. It is also shown that Combs

turned over to Duke a note for $3,000, and Duke, who testifies to this fact, does not explain why this was done, or what became of the proceeds, if collected, or of the note, if uncollected.

On the trial the defendant asked the court to instruct the jury that one who sues upon a conditional acceptance must aver and prove the fulfillment of conditions named in the acceptance before he can recover, which instruction was given.

The plaintiff requested the court to charge the jury that although the order in their favor was payable only when a settlement had been made between Combs and Duke, yet if a reasonable time had elapsed for such settlement and it had not been made, the plaintiff was entitled to recover, which instruction the court refused to give. There was a verdict and judgment for the defendant and a motion for a new trial by the plaintiff, which was overruled.

Under the facts developed by the testimony, we do not think it was incumbent upon the plaintiff to prove that a settlement of accounts had been made between Combs and Duke, as a condition precedent to their right to recover. No explanation is given by Combs of the payment by him to Duke of the proceeds of the assigned property, which was appropriable to the payment of the debts of Duke, and which, by his acceptance, he had agreed to pay to the plaintiffs after the payment of the preferred debts.

The plaintiffs having proved the receipt of the money by Combs, and its payment by him to Duke, to whom he was not authorized to make payment without having first paid the plaintiffs' order or reserved an amount sufficient for its satisfaction, were *prima facie* entitled to a recovery and it developed upon the defendant to overturn their case by a satisfactory explanation of such payment. Not making such explanation, the defendant cannot defeat the plaintiff by invoking the letter of his contract. If no settlement was in fact made, it was because the defendant waived his right to demand it, in favor of Duke, and having waived it, as to Duke, he cannot insist upon it as against the plaintiffs.

*Judgment reversed.*